**UNITED STATES of America**

v.

**Sik Sze YAN and Wai Kwok Wong, Defendants.**

**No. 88 Cr. 650 (CSH).**

United States District Court, S.D. New York.

Jan. 9, 1989.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Howard M. Shapiro, of counsel), for plaintiff.

Mass & Rudin, New York City (Joel B. Rudin, of counsel), for Sik Sze Yan.

Gould, Reimer & Gottfried, New York City (Franklyn Gould, of counsel), for Wai Kwok Wong.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In a Memorandum Opinion and Order dated December 19, 1988, 704 F.Supp. 1203, familiarity with which is assumed, I considered a motion by defendant Yan to suppress evidence obtained as a result of what he contends was an illegal search of his apartment. Given the nature of the evidence seized, co-defendant Wong is also interested in the outcome of that motion, although he lacks standing to make it.

My prior opinion directed counsel to submit supplemental briefs on a particular issue. Opinion at 1207. Helpful additional submissions have been received. I now decide Yan's motion to suppress.

The facts need not be stated again at length. For present purposes it is sufficient to say that when questioned by agents during the evening of September 7, 1988, immediately following his arrest, Yan was given his *Miranda* rights; stated that he could not afford a lawyer; and, by declining to respond to the agents' further inquiries, indicated a disinclination to cooperate with them. The agents did nothing

to clarify Yan's possible desire for counsel. The following morning, while Yan was seated on a bench in the courthouse awaiting processing before a magistrate, an agent asked Yan if he would consent to a search of his apartment. He received first an oral consent and then Yan's signature to a written consent to search form. The agents then conducted the search which forms the subject matter of this motion.

In its supplemental letter brief, the government concedes with commendable candor that Yan's statement at the time of his arrest concerning his ability to afford counsel was sufficient to implicate the Second Circuit's recent holding in *United States v. Gotay*, 844 F.2d 971 (2d Cir.1988). Thus, the government continues, "there is no dispute that Yan's statement to Agent Gee that he could not afford a lawyer qualifies as an equivocal request for counsel." Letter of AUSA Shapiro dated December 19, 1988 at 1.

In *Gotay* the Second Circuit said that when a suspect makes such a statement, "interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect's desire for counsel." 844 F.2d at 975. If "interrogation" as used in *Gotay* includes any subsequent utterance by the officers with the characteristics of a question, then the agents' conduct the following day was impermissible. "Will you consent to a search of your apartment?" is, after all, a question.

In this Court's prior opinion, I observed: "*Gotay* involved post-arrest statements, while the case at bar concerns a consent to search and the search's fruit, but *quaere* whether there is a difference in principle." Opinion 704 F.Supp. at 1206.

The government argues in its supplemental brief that there is indeed a difference. Its argument proceeds from a more narrow construction of "interrogation." *Miranda* warnings, the government rightly points out, are intended to protect Fifth Amendment rights; but the Second Circuit has also held that a consent to search is not a statement of the defendant, and thus poses "no possible violation of the Fifth Amendment rights since the consent to search is not 'evidence of a testimonial or communicated nature.'" *United States v. Faruolo*, 506 F.2d 490, 495 (2d Cir.1974), *quoting Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966).

Thus the government contends that Fifth Amendment case law is not applicable to the case at bar, since a consent to search does not fall within its boundaries; and also that Sixth Amendment case law is inapplicable, since that Amendment's right to counsel only attaches after adversary judicial proceedings have been initiated. By that latter argument, the government seeks to distinguish a number of district court cases holding that the Sixth Amendment bars the admission of the fruit of a search where consent was obtained in the absence of counsel from an indicted defendant. *See, United States v. Londono*, 659 F.Supp. 758, 770 (E.D.N.Y.1987), and cases cited.

The government concludes that the case turns upon Fourth Amendment considerations of voluntariness; and that, in the circumstances of the case, Yan's consent should be regarded as voluntary.

The government cites no case in which a suspect expressed an arguable request for the assistance of counsel, declined by his initial conduct to cooperate with officers, and thereafter, without having consulted with counsel, gave a consent to search which withstood constitutional challenge. *Faruolo, supra*, is not such a case: the suspect there, having been given his *Miranda* rights, and having been told that a search warrant would be applied for if he did not consent to a search, signed the consent form at issue "after quietly thinking a minute or two," 506 F.2d at 493.

Yan's supplemental brief continues to view the case in Fifth Amendment terms. He regards *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and subsequent Supreme Court utterances as laying down a "bright-line rule" prohibiting any questioning of a suspect who has requested the assistance of an attorney. *See, e.g., Arizona v. Roberson*, —— U.S.

——, 108 S.Ct. 2093, 2098–99, 100 L.Ed.2d 704 (1988); *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 1410, 89 L.Ed.2d 631 (1986); *Smith v. Illinois*, 469 U.S. 91, 95 n. 2, 105 S.Ct. 490, 492 n. 2, 83 L.Ed.2d 488 (1984). But Yan must acknowledge that *Edwards* and each of these succeeding cases involve the admissibility of a suspect's statements, rather than the validity of a consent to search.

The parties have conducted thorough research. The Court has added its own efforts. The closest cases on the facts appear to be *United States v. D'Antoni*, 856 F.2d 975 (7th Cir.1988), and *United States v. Rojas*, 655 F.Supp. 1156 (E.D.N.Y.1987).

In *D'Antoni*, police officers arrested the defendant, advised him of his *Miranda* rights, and then conducted an interview. Toward the end of the interview, a detective asked defendant whether he would consent to a search of his apartment. The defendant responded that he wished to call his roommate. He also asked to call an attorney. The detectives provided him with a telephone, and defendant "made numerous, unsuccessful, phone calls to locate his attorney." He then spoke by telephone with his roommate, and thereafter agreed to sign a consent to search form, without having reached counsel. 856 F.2d at 977–78.

On the appeal following defendant's conviction, the Seventh Circuit said of this incident: "It is well settled that when a person in custody requests counsel all questioning must cease until counsel has been made available, unless the person in custody initiates further communication with the police." *Id.* at 982 (citing *Edwards* and *Roberson*). The Seventh Circuit continued:

The detectives arguably violated this bright-line rule when they asked the defendant after his unsuccessful attempts to reach his attorney whether he wished to discuss his consent to the search of his apartment.

*Ibid.*

That "arguable" violation appears to turn into a holding by the court of appeals when it says in its conclusion at 985: "We find, however, that the government did violate the defendant's right to consult with counsel, and the defendant's consent to search obtained after that violation therefore should have been deemed ineffective." But the Seventh Circuit concluded that in all the circumstances "this error was harmless," and affirmed the conviction. *Ibid.*

In *Rojas*, the defendant, one Parra, was arrested, given his *Miranda* rights, and exercised them by initially refusing to respond. The arresting agent insisted that the defendant respond to questions concerning his pedigree. An oral consent to search the defendant's apartment was then obtained in circumstances with Judge Sifton described at 655 F.Supp. at 1162:

Following Agent Abrams' insistence that he respond to questions concerning his pedigree, Parra gave information about his personal background as noted above. When asked about his employment, however, he again declined to answer. Agent Abrams then departed from pedigree questioning entirely and asked Parra, first, if there was anyone else "that might be arrested with him" and whether "at the residence you gave me, is there anyone there?" Faced with these questions, Parra answered "no" and, when questioned immediately thereafter whether he would consent to a search of the residence, answered "yes, nothing is there."

The agent then produced a written consent to search form. Defendant responded: "I would rather not sign it until after I spoke to my attorney." The agents searched defendant's apartment anyway. The government relied upon the oral consent in opposition to defendant's motion to suppress. Judge Sifton granted that motion on the basis of the following analysis:

Whether this consent survived Parra's later request to consult with his attorney before complying with the agent's request to express it in written form or was voluntary need not be resolved since the consent was clearly the tainted product of questioning in violation of *Miranda*. As noted above, the consent came after the agent had left matters of pedigree behind and turned to substan-

tive issues of guilt or innocence and after Parra had exercised his right to remain silent. Having, by this process, elicited Parra's protestation that there were no narcotics or money at his residence, the agent then immediately exploited the results of this illegal questioning by pressing for defendant's consent to search the supposedly empty apartment. The search is, as a result, tainted with the illegality of its origins, and the evidence discovered by this means must be suppressed.

*Id.* at 1168.

Thus Judge Sifton, focusing upon the questioning which immediately preceded the giving of the oral consent, analyzed the case in Fifth Amendment terms rather than applying the Fourth Amendment test of voluntariness.

To the extent these cases are instructive in the case at bar, they support defendant Yan. The government seeks to distinguish both on their facts. With respect to *D'Antoni*, the government stresses that the agents' request for a consent to search immediately triggered the defendant's effort to contact an attorney, whereas here the subject of a search was not introduced until the following morning, and did not provoke any renewed comment or inquiry by Yan about the assistance of counsel. As for *Rojas*, the government points out that the agent who asked Yan about a consensual search did not precede that request by a series of questions violative of the Fifth Amendment.

While no case exactly mirrors the case at bar, I conclude that Yan is entitled to prevail on both Fourth and Fifth Amendment grounds.

■■■ As to the Fourth Amendment, the question is whether Yan's consent to the search was voluntary, in the sense of being a knowing and intelligent waiver of his right to insist upon a warrant. I fully recognize that a layman is capable in law of making a knowing and intelligent waiver of his Fourth Amendment rights without first consulting counsel, provided that law enforcement officers have not mislead or deceived him in any way. But the layman

may also prefer to receive the advice of counsel, before "knowing" what to do in respect of a search or being sufficiently "intelligent" to make that decision. On the evening of Yan's arrest, he articulated to the agents what the government properly concedes to be an equivocal request for counsel. It does not stretch the *Gotay* rule to require the agents at that time to clarify Yan's desires, or alternatively to advise him that if he could not afford an attorney, one would be provided without cost. The agents did neither of these things; they simply awaited the morning and then obtained Yan's consent to a search. However, as Judge McLaughlin observed in a Sixth Amendment context in *Londono, supra,* at 770: "There are several ways in which the presence of an attorney can help a defendant in the consent search context." That is just as true pre-indictment as it is post-indictment. The government bears the burden of proving Yan's voluntary, that is to say knowing and intelligent, waiver of his Fourth Amendment rights. Here, Yan at the time of his arrest expressed an equivocal request for counsel, and manifested a desire not to cooperate with the agents. The agents disregarded the request for counsel, and obtained a consent to search the following morning, after Yan had been held in custody overnight. I conclude that these circumstances preclude a finding that Yan's consent to a warrantless search was knowing and intelligent, and thus voluntary. Accordingly the fruits of that search will be suppressed.

■■■ Alternatively, I suppress this evidence on Fifth Amendment grounds. The holding in *Edwards v. Arizona, supra,* is "that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. at 1884–85. I consider the rationale of *Edwards* to be broad enough to include "interrogation" about whether the accused will consent to a warrantless

search. Surely that is an area where an accused would be well advised "to deal with the police only through counsel." In *D'Antoni* the Seventh Circuit interpreted more recent Supreme Court authority as invalidating an accused's consent to search after expressing an interest in consulting counsel. I agree with the holding of that court, and do not accept the government's effort to distinguish the case on the facts. Once a suspect expresses a desire for counsel, explicit or equivocal, all questioning should cease, including questions about a consent search. To hold otherwise would require courts to separate the wheat of Fourth Amendment voluntary consent from the chaff of illicit Fifth Amendment interrogation. Such a rule has obvious practical difficulties; and the broader Fifth Amendment analysis adopted here seems to me more in keeping with recent authority.

Defendant Yan's motion to suppress is granted. It is SO ORDERED. A separate scheduling order will enter.