944 F.2d 907
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Daniel P. MARTIN, Petitioner/Appellant,
v.
Donald E. CLUSEN, Respondent/Appellee.
 No. 90-3341.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 25, 1991.*
Decided Sept. 19, 1991.
 
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Daniel Martin pleaded no contest to nine counts of sexual assault and one count of burglary in a Wisconsin state court. He was convicted on all counts and sentenced to eight years each on the sexual assault charges, to be served consecutively, and eight years on the burglary count, to be served concurrent to the other terms. After exhausting his state court appeals Mr. Martin filed a petition for a writ of habeas corpus in the district court, see 28 U.S.C. § 2254, claiming that the police had violated his fifth amendment right to remain silent and, therefore, that the subsequently admitted incriminating statement should have been suppressed. The district court declined to grant the writ and Mr. Martin filed this appeal.
 
 I. FACTS
 
 2
 On the morning of September 11, 1987 the Madison police department received a call that a sexual assault had occurred and that the attacker was asleep in the victim's home. Officers Long and Miller arrived at the home and found Daniel Martin lying naked and asleep in a bedroom. They awakened Mr. Martin and gave him a towel with which to cover himself. They asked him several questions at that initial encounter. The state trial court subsequently suppressed the statements Mr. Martin gave at that time, concluding that Mr. Martin's liberty had been restricted at the time the police officers first encountered him in the bedroom.
 
 
 3
 The officers then placed Mr. Martin in a squad car and drove past a location where the victim identified him as her attacker. The officers then informed Mr. Martin that he was under arrest and Officer Long read him his Miranda rights. Mr. Martin shook his head, indicating that he did not wish to answer questions. This occurred approximately fifteen minutes after he had been placed in the police car.
 
 
 4
 The police then took Mr. Martin to the police station where he was placed alone in an interrogation room, as is standard procedure. Officer Long stood outside the door of the interrogation room but there is no evidence that Mr. Martin was aware of his presence. Officer Miller gave Mr. Martin some clothes. Officer Miller then informed Detective Reinstra that Mr. Martin had been given his Miranda warnings and that no statement had been taken. He did not inform the detective that Mr. Martin had invoked his right to silence. Officer Miller then left the police station.
 
 
 5
 Detective Reinstra entered the interrogation room. Approximately 75-90 minutes had passed since Mr. Martin was given the Miranda warnings. Detective Reinstra repeated the Miranda warnings to Mr. Martin. Detective Reinstra and Mr. Martin then discussed the sexual attack and burglary for approximately one hour, during which time Mr. Martin made various incriminating statements which the state trial court refused to suppress.
 
 II. ANALYSIS
 
 6
 Mr. Martin argues that the police violated his fifth amendment right when they resumed questioning him approximately one and one-half hours after he invoked his right to remain silent. The State responds that Mr. Martin knowingly waived his right to silence when he agreed to speak with Detective Reinstra after receiving the Miranda warnings for a second time. Whether a defendant waived his right to silence is a factual question subject to review under a clearly erroneous standard. United States v. D'Antoni, 856 F.2d 975, 980 (7th Cir.1988). Furthermore, state findings of fact are subject to a presumption of correctness in the habeas context. 28 U.S.C. § 2254(d).
 
 
 7
 In Michigan v. Mosley, 423 U.S. 96 (1975), the Supreme Court fashioned a case-by-case approach to analyze when a defendant's responses to questioning made after an invocation of the right to silence were the product of that individual's free will. The court reasoned that to absolutely prohibit all questioning after a defendant's invocation of the right to silence would be "irrational" and would frustrate the police's "legitimate ... investigative activity." Id. at 102. Rather, a court must determine if the police "scrupulously honored" a defendant's desire not to answer police questions, recognizing that a defendant may later waive that right. Id.; see also Miranda v. Arizona, 384 U.S. 436 (1966); United States v. Serlin, 707 F.2d 953, 958 (7th Cir.1983).
 
 
 8
 The Supreme Court listed five factors to consider in determining whether a defendant's statement was the product of coercion or a defendant's free will: 1) upon the invocation of the right to silence the first interrogation is promptly halted; 2) questioning resumes only after a significant period of time has elapsed; 3) Miranda warnings are given again before any renewed questioning; 4) a different police officer conducts the interrogation; and 5) the second interrogation addresses a crime that was not the subject of the first interrogation. Mosley, 423 U.S. at 104-06. However, the Court did not suggest that this list is exhaustive or that the absence of one factor requires the finding of a constitutional violation. United States v. Hsu, 852 F.2d 408, 410 (9th Cir.1988).
 
 
 9
 Nevertheless, Mr. Martin contends that his constitutional rights were violated because three of the Mosley criteria were absent from the interrogations the police conducted during their initial investigation. Mr. Martin argues that: 1) he was questioned twice regarding the same crime; 2) a significant period of time had not elapsed between the two interrogations because he was in police custody during the entire 75-90 minutes between the two interrogations; and 3) Officer Long's presence outside the door of the interrogation room during the 75-90 minutes undermined the fact that another officer conducted the second interrogation and requires that a court deem that only one officer conducted both interrogations.
 
 
 10
 Mr. Martin was alone in an interrogation room during the 75-90 minutes between questioning. There is no indication in the record, nor does Mr. Martin point to any evidence that he was coerced to answer questions at any time during this period. Mr. Martin does not explain why 75-90 minutes was not a significant period of time between questioning, given the lack of a coercive environment during that period. See D'Antoni, 756 F.2d at 981; Serlin, 707 F.2d at 958.
 
 
 11
 The state court also concluded that Mr. Martin was not aware of Officer Long's presence outside the interrogation room and concluded therefore that there was no basis to argue that the same officer was present at both interrogations. That finding was not clearly erroneous and we therefore agree that the second interrogation was conducted by a different police officer.
 
 
 12
 Of notable significance also is the fact that Mr. Martin was given the Miranda warnings prior to the second interrogation. Although Mr. Martin focuses on the fact that Officers Long and Miller neglected to inform Detective Reinstra that he had invoked his right to remain silent, the state court concluded that this omission was inadvertent and that Detective Reinstra had been informed that Mr. Martin received his Miranda warnings. Thus, the court concluded that the police did not act in a deliberately deceptive manner in resuming interrogation. Again, there is no indication that this factual finding was clearly erroneous and we concur that the second interrogation was conducted in a non-coercive manner.
 
 
 13
 Therefore, we are left with the fact that both interrogations concerned the same crime. Nevertheless, Mr. Martin was fully informed of his rights and chose to waive those rights and answer police questions. Both Miranda and Mosley recognize that a defendant retains the ability to change his mind and waive an invoked right. Cf. United States v. Amaro, 816 F.2d 284, 286 (7th Cir.1987). In the case at hand Mr. Martin did just that. He willingly engaged in a conversation with Detective Reinstra a significant period of time after the first interrogation and after receiving the Miranda warnings for a second time. He has failed to point to evidence that these questions were administered in an unconstitutional manner. Therefore, the district court's refusal to grant a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need or Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs