**UNITED STATES of America**

v.

**Stephen SHLATER.**

No. 1:93–cr–58.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 23, 1994.

equately supported its request for attorneys' fees and costs.

Harold W. Myers, Wyss McNellis Riebenack and Myers, Fort Wayne, IN, for defendant.

David H. Miller, U.S. Attys. Office, Fort Wayne, IN, for U.S.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Defendant Stephen Shlater's Motion to Suppress, which was filed on October 17, 1994. On October 24, 1994, the court held an evidentiary hearing on the Motion to Suppress and took the matter under advisement. The Government filed a Response to Defendant's Motion to Suppress on November 8, 1994, and on November 30, 1994, Shlater filed a Response to the Government's Response. On December 14, 1994, the court ordered further hearing on the matter, directing the parties' attention to a specific issue and line of cases. On December 16, 1994, the Government submitted a Response to the court's Order of December 14, 1994. On December 21, 1994, the court held further hearing on the matter pursuant to the December 14, 1994, order. The Defendant's Motion to Suppress is DENIED.

## FACTS

On November 20, 1993, employees of the Scott's Food Store at Pine Valley Mall ("Scott's") received a letter that appeared to be an extortion note. The note demanded that $150,000 in cash be paid, and threatened that certain explosive devices would be detonated if the payment was not made. The note also instructed the store employees how to proceed. Upon receipt of the note, the Scott's employees contacted the Allen County Police Department. Members of the investigative team followed the instructions described in the note and went to the Speedway Gas Station on Dupont Road. At the gas station pay phone, the officers received a call instructing them to go to the City Utilities Park and await further direction. The officers went to City Utilities Park and found a note that directed them to Meta Park. At Meta Park, the officers found another note, which directed them to an unmarked lane off of North Clinton Street, where they received instructions to leave the money near a tree.

The money was left at the site as directed by the note. Officer Gore got out of the vehicle that had delivered the money and concealed himself in the woods, where he could view the tree and the money. Shortly thereafter, Stephen Shlater ("Shlater") came out of the woods and went to the tree. Shlater was arrested when he tried to pick up the extortion money. Officer Gore identified himself as a police officer and told Shlater to halt. Shlater threw down the money, raised his arms above his head, and said, "Don't hurt me, they're making me do this." Officer Gore instructed Shlater to lie prone on the ground. Shlater complied. Shlater continually said, "They're making me do this, do not hurt me." To determine his own safety, Officer Gore asked the defendant whether there were other persons in the area; and he told Shlater not to say anymore. However, Shlater continued to state that people were making him do this and not to hurt him because he was forced to do this. Shlater said that the proof of this was at his house and that the police could go over and get the note.

Shlater was taken back to the Allen County police office and the interrogation process began, all of which was videotaped. Shlater was advised of his *Miranda* rights, and he told the officers that he wished to speak to an attorney. The advice-of-rights form was signed by Shlater and indicates that he wished to have. an attorney present, as he wrote this request on the form in addition to verbally asking for a lawyer. After this, the officers initiated a discussion of the consent to search and executed the consent-to-search form, which advised Shlater that he had the right to have an attorney present prior to

executing the consent to search form. Shlater willingly gave the officers consent to search his residence. The videotape of this process indicates that the officers executing the advice-of-rights and consent-to-search forms were polite, attentive, and careful, and that Shlater was rational and cooperative. The videotape demonstrates clearly that the officers did not communicate with the defendant in an overreaching or coercive fashion.

### ANALYSIS

This case squarely presents the issue of whether a defendant's invocation of the Fifth Amendment right to have counsel present during interrogation extends to subsequent communications with the police regarding a request for consent to search. The government claims that the consent was made voluntarily and was not the result of "interrogation." The defendant claims that the court need not reach the issue of whether the consent given by Shlater was voluntary because the government's request for consent violated defendant's right to counsel. Alternatively, the defendant asserts that his consent was not voluntary.

I. *A request to search does not amount to interrogation. Absent interrogation, there is no infringement of the Fifth Amendment right to counsel invoked by the defendant; and, therefore, Shlater's consent to search was valid under the Fifth Amendment.*

■ The government asserts that a request for a consent to search is not interrogation, and because there was no interrogation, the statements made by Shlater are not subject to suppression. The defendant claims that having requested an attorney, the government's subsequent procurement of the consent to search violated his Fifth Amendment right against self-incrimination.

In *United States v. D'Antoni,* 856 F.2d 975, 985 (7th Cir.1988), the Seventh Circuit addressed a situation similar to the present one and found that the government violated the defendant's right to consult with counsel. In *D'Antoni,* the defendant was arrested and advised of his constitutional rights in a police car on the way to the station. *Id.* at 977.

The officer and the defendant then discussed the incident which had just occurred. When the defendant arrived at the police station, he was advised again of his rights and asked whether he wished to speak with detectives. He stated that he had already given his story to the police officers, but agreed to answer some more detailed questions. *Id.* at 978. Toward the end of the interview, a detective asked whether he would consent to a search of his apartment. At this point, the defendant stated that he wished to call his roommate and an attorney. The defendant made several unsuccessful attempts to contact his attorney, after which he called his roommate and talked with him about the search of the apartment. The officers then inquired whether the defendant desired to discuss further his willingness to consent to the search, and the defendant agreed to sign the consent-to-search form.

The Seventh Circuit found that "[i]t is well-settled that when a person in custody requests counsel all questioning must cease until counsel has been made available, unless the person in custody initiates further communication with the police." *Id.* at 982 (citing *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *Arizona v. Roberson,* 486 U.S. 675, 675–77, 108 S.Ct. 2093, 2095, 100 L.Ed.2d 704 (1988)). The court held that "[t]he detectives arguably violated this bright-line rule when they asked the defendant after his unsuccessful attempts to reach his attorney whether he wished to discuss his consent to the search of his apartment." *Id.* The court noted that the cases "do not speak in terms of allowing a person in custody the *opportunity* to seek counsel, they speak of making an attorney available." *Id.* (emphasis supplied). The court went on to state that "[t]he detectives, however, did *not* ask for more detailed information about the case, but only about what the defendant wanted to do about a possible search." *Id.* Nonetheless, in its conclusion, the court stated: "We find, however, that the government did violate the defendant's right to consult with counsel, and the defendant's consent to search obtained after that viola-

tion therefore should have been deemed ineffective." *Id.* at 985.[1]

Despite the close factual similarities, *D'Antoni* is not controlling in the present situation. The Seventh Circuit has more recently decided that a consent to search is not an incriminating statement, and therefore, a request to search does not amount to interrogation. *United States v. Smith,* 3 F.3d 1088 (7th Cir.1993)[2]; *United States v. Glenna,* 878 F.2d 967 (7th Cir.1989).[3] *See also United States v. Roux,* 743 F.Supp. 607, 612, n. 11 (N.D.Ind.1990) (citing *Glenna* with approval: "where the Seventh Circuit adopted the holding of several federal circuit courts that a consent to search is not an incriminating statement and thus there is no possible violation of Fifth Amendment rights").

Because the Supreme Court expressly noted that absent interrogation, there is no infringement of the Fifth Amendment, *Edwards v. Arizona,* 451 U.S. at 485–87, 101 S.Ct. at 1885–86, and because the Seventh Circuit has expressly ruled that a request for a consent to search is not interrogation, the officers did not infringe Shlater's Fifth Amendment rights in the present case. The court emphasizes that *Glenna* and *Smith* were decided in 1989 and 1993, while *D'Antoni* was decided in 1988. Further, in *D'Antoni,* the court seemed to recognize a difference between a request for a consent to search and "interrogation" about the facts of a case when it stated that "[t]he detectives, however, did not ask for more detailed information about the case, but only about what the defendant wanted to do about a possible search." *D'Antoni,* 856 F.2d at 982.

The Eleventh Circuit recently decided a case that is very close to the facts in this case and adopts the analysis set forth above. *See United States v. Hidalgo,* 7 F.3d 1566 (11th Cir.1993). In *Hidalgo,* the defendant was arrested at home, given the *Miranda* warning, stated that he didn't want to talk, and then was given a consent-to-search form. *Id.* The court held that *Miranda* and its progeny are designed to ensure that an individual being subjected to custodial interrogation is accorded the Fifth Amendment privilege against compulsory self-incrimination. *Id.* at 1568. The court found that " 'every federal circuit court which has addressed the *Miranda* issue presented here has reached the conclusion that a consent to search is not an incriminating statement.' " *Hidalgo,* 7 F.3d at 1568 (quoting *United States v. Rodriguez–Garcia,* 983 F.2d 1563, 1568 (10th Cir.1993) (citing *United States v. Lewis,* 921 F.2d 1294, 1303 (D.C.Cir.1990)); *United States v. Glenna,* 878 F.2d 967, 971 (7th Cir.1989); *Cody v. Solem,* 755 F.2d 1323, 1330 (8th Cir.), *cert. denied,* 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); *United States v. Lemon,* 550 F.2d 467, 472 (9th Cir.1977)).

Like the defendant in *Hidalgo,* Shlater was arrested, given the *Miranda* warning, invoked a Fifth Amendment right, and was then given a consent-to-search form. Like the court in *Hidalgo,* this court holds that because a consent to search is not an incriminating statement, Shlater's Fifth Amendment privilege against self-incrimination was not violated.

II. *The defendant suffered no violation of his Fourth Amendment rights because his consent was given voluntarily.*

The question of whether a consent is valid is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). The "totality of the circumstances"

---

1. *See also United States v. Yan,* 704 F.Supp. 1207, 1211 (S.D.N.Y.1989) (holding that "the rationale of *Edwards* [is] broad enough to include 'interrogation' about whether the accused will consent to a warrantless search."); *United States v. Taft,* 769 F.Supp. 1295, 1305 (D.Vt.1991) (finding that the agents had violated the bright-line *Edwards* rule when they asked defendants for consent to search after the defendants had requested and unsuccessfully attempted to reach their attorney).

2. In *Smith,* the officer asked the defendant if he could search an athletic bag that had been found in the car, and the defendant consented. The defendant had not been arrested or read his *Miranda* rights.

3. In *Glenna,* the defendant was apprehended by a parked van, and the officers elicited his consent to search the van. The defendant was not given his *Miranda* rights prior to the request for consent to search.

includes an analysis of the defendant's age, education, and apparent intelligence; whether the defendant was advised of constitutional rights; the length of detention prior to obtaining consent; the presence of physical or subtle coercion; and whether the defendant was in custody at the time of the request for consent. *United States v. Rojas,* 783 F.2d 105, 109 (7th Cir.1986). The government bears the burden of proving, by a preponderance of the evidence, that the consent was voluntary. *United States v. Lechuga,* 925 F.2d 1035, 1041 (7th Cir.1991).

An examination of the factors laid out in *Rojas* demonstrates that Shlater's consent to search was voluntary. Shlater is an educated individual who possessed an Associate's Degree, had attained the rank of Major in the United States Army Reserve, and had been employed by General Electric for twenty-eight (28) years. Shlater was advised of his constitutional rights, as was shown by the videotape. After arriving at the police station, Shlater was not detained for long before the officers executed the consent-to-search form.

Additionally, there was absolutely no evidence of any physical or mental coercion. In viewing the videotape, it is clear that the officers and Shlater were engaged in a frank, straightforward review of first, the advice-of-rights form, and then, the consent-to-search form. The court agrees with the government that the videotape is the most compelling evidence that the consent was not obtained through any coercive or threatening measures. Indeed, after Shlater gave the officers his consent to search his house, Shlater, without any prompting by the officers, voluntarily told them about the presence of his dog, informed them that he was the sole resident of the house, and explained who they could contact to obtain a key to his house. Shlater seemed to have no reservation about the police searching his house and

appeared to encourage the search, stating repeatedly that he had no problem with them searching the house.[4]

Also, although Shlater was in custody when he consented to the search, there was nothing about the nature of his custody that would lead the court to believe that the consent was not voluntary. Finally, the fact that the defendant signed a form which warned him that he had the right not to consent and the right to consult with an attorney before consenting weighs heavily toward finding that his consent was voluntary. *United States v. Mendenhall,* 446 U.S. 544, 558–59, 100 S.Ct. 1870, 1879–80, 64 L.Ed.2d 497 (1980) (holding that proof of knowledge of a right to refuse consent to search is highly relevant to the determination of whether there was consent). *See also United States v. Duran,* 957 F.2d 499, 502 (7th Cir.1992) (finding that where a defendant had been informed that she had a right to withhold consent and that any evidence discovered as a result of the search could be used against her in court, this "weighs heavily toward finding that the consent is voluntary").[5] In sum, the government has proven, by a preponderance of the evidence, that when viewing the totality of the circumstances, Shlater voluntarily gave his consent for the police to conduct a search of his house.

III. *A request for a consent to search is not a "critical stage of the proceeding" protected by the Sixth Amendment.*

■ Shlater claims that the government's request for consent violated his right to counsel. Shlater asserts that the request for him to consent to a search, and thereby waive his Fourth Amendment right against a warrantless search and seizure, constituted a critical stage of the proceedings. Thus, claims Shlater, "the Government's procurement of Defendant's Consent to Search violated his

---

4. This is also indicated by Shlater's statement when he was apprehended that proof that he was forced to do this was at his house and the police could go over and get the note.

5. The defendant asked that the court take judicial notice of Magistrate Cosbey's order for a psychological evaluation along with Dr. Ross's report, which continues to remain under seal. After

reviewing the psychological evaluation of Dr. Ross and the videotape of the request for consent to search, the court finds that the voluntariness of the defendant's consent was not impeded by any mental condition. When giving his consent for the search, the defendant appeared to be calm, rational, and fully aware.

Sixth Amendment right to counsel ..." (Defendant's Response Brief, p. 5.)

However, the Sixth Amendment right to counsel attaches only when adversary judicial proceedings have been initiated against the defendant. *United States v. Gouveia,* 467 U.S. 180, 187–88, 104 S.Ct. 2292, 2296–98, 81 L.Ed.2d 146 (1984); *United States v. Jungels,* 910 F.2d 1501, 1505 (7th Cir.1990). An adversary proceeding "can be initiated by a formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)). After a defendant's Sixth Amendment right to counsel attaches, he has a right to the advice of counsel at "critical stages" of the proceeding, defined as "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *United States v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967).

Because in the present case, a judicial proceeding had not been initiated against Shlater, no right to counsel had yet attached. Even if the proceeding had been initiated by a formal charge, preliminary hearing, indictment, information, or arraignment, the request for consent to search is not a "critical stage" of the proceeding. Several federal circuit courts recently have held that a request for a consent to search is not a critical stage of a criminal proceeding to which the Sixth Amendment right to counsel attaches. *United States v. Hidalgo,* 7 F.3d 1566, 1570 (11th Cir.1993) *United States v. Kon Yu–Leung,* 910 F.2d 33, 38 (2d Cir.1990). As the court in *Hidalgo* noted, the request for a consent to search is not "a trial-like confrontation where the absence of counsel poses a threat of substantial prejudice to the accused." The court found it to be more analogous to a request for other types of physical evidence, such as handwriting exemplars, blood samples, and photographic displays. *Id.* Further, the court finds that the cases cited by the defendant, *United States v. Fisher,* 329 F.Supp. 630 (D.Minn.1971); *United States v. Pelensky,* 300 F.Supp. 976

(D.Vt.1969), are not persuasive authority, as more recent and relevant caselaw is available. In conclusion, Shlater suffered no violation of his Fourth, Fifth, or Sixth Amendment rights as alleged in the Motion to Suppress. Accordingly, the Defendant's Motion to Suppress is DENIED.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is DENIED.