Tommy L. BOBO, Petitioner–Appellant,

v.

Darrell A. KOLB, Superintendent, Waupun Correctional Facility, Respondent–Appellee.

No. 91–1080.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1992.

Decided July 22, 1992.

Gary L. Starkman, Steven Rissman (argued), Ross & Hardies, Chicago, Ill., for petitioner-appellant.

Donald J. Hanaway, Atty. Gen., Thomas J. Balistreri, Asst. Atty. Gen. (argued), Wisconsin Dept. of Justice, Madison, Wis., E. Michael McCann, Milwaukee, Wis., for respondent-appellee.

Before POSNER, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Appellant Tommy Lamont Bobo was convicted in Wisconsin state court of the murders of his girlfriend and daughter. After exhausting his state remedies, he filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Mr. Bobo alleges that certain incriminating statements he made while in custody were taken in violation of his *Miranda* right to silence and that he was denied the effective assistance

of counsel during his interrogation. The district court denied the petition. For the following reasons, we affirm.

# I

## BACKGROUND

### A. *Facts*

At approximately 11:45 a.m. on April 4, 1984, Milwaukee police detective Lemoyne Richardson arrived at the house of Mrs. Jeannetta Robinson to investigate the disappearances of her daughter, Cheryl Robinson, and her granddaughter, Jeannetta Robinson. At the house, Detective Richardson met Mr. Bobo, who was Cheryl's boyfriend and Jeannetta's father. Mr. Bobo accompanied Detective Richardson to the police station and spent most of that afternoon answering questions about his activities the prior evening with Cheryl and Jeannetta. During the course of his conversation with the police—at approximately 2 p.m.—Mr. Bobo was advised of his constitutional rights. However, he did not invoke these rights and made various statements.

Later that afternoon, the bodies of Cheryl and Jeannetta Robinson were found in an automobile. Subsequently, at approximately 6:50 p.m., Detective Richardson placed Mr. Bobo under arrest for the murders and read him the *Miranda* warnings. Mr. Bobo answered "yes" when asked if he understood his rights and "no" when asked if he had any questions concerning his constitutional rights. However, when Detective Richardson inquired if he was willing to waive those rights and make any statements, Mr. Bobo remained mute. Detective Richardson then ended the interview and took Mr. Bobo to be booked.

At 10:05 p.m. the same evening, Detective Howard Sobczyk, who apparently was unaware that Mr. Bobo had been mute during his interview with Detective Richardson, met with Mr. Bobo in an interrogation room. At the start of this session, Detective Sobczyk advised Mr. Bobo of his rights, and asked if he understood each of them. Mr. Bobo answered that he did. Detective Sobczyk then asked if Mr. Bobo wanted to consult with an attorney. Mr. Bobo replied no. When asked if he wanted to answer questions, Mr. Bobo replied that he would.

In the afternoon of the following day, April 5, 1984, Attorney Jimmie Davison arrived at the Detective Bureau and asked to talk with Mr. Bobo. Mr. Davison was a friend of Mr. Bobo's family and of the victims' family, and he was also representing Mr. Bobo on other unrelated matters. Mr. Davison held an interview with Mr. Bobo lasting ten to fifteen minutes. When Mr. Davison emerged from this interview, he told the detectives that he believed that he was going to represent Mr. Bobo, and also that the police could continue to interrogate Mr. Bobo.

While Mr. Davison was speaking with Mr. Bobo, the police received a phone call from an attorney in the public defender's office stating that that office would represent Mr. Bobo and that he was not to be questioned further. However, after Mr. Davison's statement about representation of Mr. Bobo, the police called the public defender's office and informed it of Mr. Davison's representation. The police then recommended questioning Mr. Bobo and he later stated that he had committed the murders. Later that same day, at 8:40 p.m., Mr. Bobo invoked his right to counsel.

Mr. Bobo was charged with two counts of first degree murder. On May 25, 1985, Mr. Bobo was convicted of both charges, and he received a sentence of two consecutive life terms.

### B. *Procedural Posture*

#### 1. State court proceedings

Prior to trial, Mr. Bobo moved to suppress the statements he made while in custody. He argued that they had been elicited in violation of his right to remain silent and his right to counsel. The trial court granted this motion in part. It found that Mr. Bobo had invoked his right to counsel at 8:40 p.m. on April 5—after he had implicated himself in the murders. Consequently, all statements made after that time were excluded from trial. However, the

court declined to suppress any statements made before that time; it found that Mr. Bobo had made them freely and had never invoked his right to remain silent.[1]

Following his conviction, Mr. Bobo, through counsel, filed a post-trial motion seeking, among other things, to suppress statements that he made after he had been visited by Mr. Davison. As the basis for this claim, Mr. Bobo contended that Mr. Davison's management of the police questioning was so deficient that it constituted a denial of the right to the effective assistance of counsel. The trial court denied this motion. It ruled that Mr. Bobo's goal was to suppress evidence, and that this sanction is inappropriate without some showing of police misconduct. Tr. D–9 at 18–20. After this ruling, the defendant asked to personally address the court and declared that there was no ground for the motion because Mr. Davison had not been representing him.[2]

Mr. Bobo appealed his conviction to the Wisconsin Court of Appeals, which affirmed in an unpublished opinion. With

---

1. The state trial court found in relevant part:

 The defendant is an experienced suspect in criminal matters. He has been in the criminal justice system in the past and has been represented by counsel in the past. In examining the totality of the circumstances, the defendant at all times expressed verbally his wishes—his hunger, his thirst, his desire to make a phone call, his wishes to stop questioning because of his fatigue, his desire to see his attorney. The police granted and honored those requests until 8:40 p.m. on April 5th, 1984. The defendant was upset and crying at times, but he was always able to regain his composure, understand the questions, and be responsive. When he wanted something, he asked for it—up to 8:40 p.m. on April 5, 1984, when he asked to see his attorney.

 The defendant's muteness at times and responses that, quote, "I can't answer that question. I don't want to lie," end of quote, taken in the context of the defendant's ability to understand what was going on and to verbalize his wants and needs were not an invocation of his right to remain silent.

 The Court will further find that the time between the defendant's arrest and his appearance in court, in intake court, was not an unreasonable delay considering the magnitude and nature of the offenses, the number of officers involved, and the continuing investigation.

 The Court's going to find that all statements made by the defendant prior to 6:50 p.m. on April 4th were made freely and voluntarily and not the result of duress, threats, or coercion or promises. The defendant was not in custody at that time and, therefore, those statements will not be suppressed.

 The Court will further find that prior to making his post-arrest statements, the defendant was fully and properly advised of his constitutional rights under the Miranda decision, that the defendant understood all of those rights. Further, the defendant was willing to make the statements he made and that up to 8:40 p.m. on April 5, 1984, the Milwaukee Police Department did not violate the defendant's constitutional rights.

 The Court does find that the detailed "confession" made by the defendant was made subsequent to the defendant's invocation of his right to counsel. (I am referring there to the statement made to Detectives Rodgers and Morrow.) The defendant's statements were not the result of duress, threats, coercion or promises. Although the defendant was tearful and upset at times during the interview, he always regained his composure and was able to competently and fully participate in the questioning to the point that he invoked two constitutional rights at 8:40 p.m. on April 5th, 1984, without any difficulty whatsoever.

 *Bobo v. Kolb,* No. 88–C–394 (JPS), slip op. at Appendix 4–5 (E.D.Wis. Nov. 15, 1990).

2. MR. HUPPERTZ: Your Honor, I will supply the court with an order to that effect. My client, Mr. Bobo, just leaned over to me and indicated that he would like to make a brief statement to the court based on these motions.

 THE DEFENDANT: Based on the one that you had—

 THE COURT: Go ahead, Mr. Bobo.

 THE DEFENDANT: —one issue raised as far as Mr. Huppertz, I felt that Mr. Davison was incompetent or ineffective as my counsel, when he told me he wanted to raise that issue, I told him that I felt that it wouldn't be in my best interests to even raise that issue because Mr. Davison was not my counsel at that present time, and he was not representing me.

 He told me he felt that that was an issue that I should raise, that he felt it was a strong issue.

 The issue that I wanted to raise he told me he felt like, well, you know, let's go along with what I want, you know, I don't want you to file any motions; let me do all of the work, and, you know, so that was the issue he wanted to raise.

 What I wanted to do, you talk about Mr. Bobo felt Mr. Davison so on and so on, that's nothing. That's his doing.

 THE COURT: All right, you have made your statement.

 THE DEFENDANT. Right.

 Tr. D–9 at 20–21.

regard to the claim that the police extracted statements in violation of Mr. Bobo's right to remain silent, the court found that Mr. Bobo had never invoked that right before he asked for counsel on the evening of April 5. *State v. Bobo*, No. 86–0900–CR, slip op. at 9–10 (Wis.Ct.App. April 9, 1987) [139 Wis.2d 856, 407 N.W.2d 566 (table)]. Consequently, any statements made before that time were not taken in violation of his rights. The court denied Mr. Bobo's ineffective assistance of counsel claim on strictly procedural grounds. Prior to the conclusion of the post-trial hearing in which the claim was argued, Mr. Bobo stated that he had not wished this claim to be brought because Mr. Davison had never been his counsel. As a result of this statement, the court of appeals found it

> inconsistent to raise the issue of ineffective assistance of counsel, when Bobo expressly did not wish to have the issue raised and he also stated that Davison was "not my counsel at that present time, and he was not representing me." We conclude that Bobo cannot now claim that he was denied the right to effective assistance of counsel.

*Id.* at 16–17. The Wisconsin Supreme Court denied Mr. Bobo's petition to review the decision of the court of appeals.

2. Federal court proceedings

Having exhausted his state remedies, Mr. Bobo filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin. In the district court, Mr. Bobo pressed two of the claims that he made to the state courts—first that the police had violated his right to remain silent and, second, that he was denied effective assistance of counsel. The district court denied relief in an unpublished opinion and order. *Bobo v. Kolb*, No. 88–C–394 (JPS), slip op. at 14 (E.D.Wis. Nov. 15, 1990). With regard to the right to silence claim, the district court relied upon the trial court's finding that Mr. Bobo had never explicitly invoked his right to remain silent. *Id.* at 5–11. The court then described Mr. Bobo's silence after Detective Richardson gave him his *Miranda* warnings as a possibly equivocal

invocation of his rights. *Id.* at 12. However, the court found that the police acted properly in the face of this silence by immediately stopping the interview and then continuing it only after Mr. Bobo explicitly stated that he wished to answer questions. *Id.* The district court rejected the ineffective assistance of counsel claim on several grounds, concluding, first, that Mr. Bobo's disavowal of it before the state trial court prevented review on habeas; second, that no factual predicate supported the claim; and, third, that no legal authority supported finding a right to effective counsel at interrogation. *Id.* at 13–14.

II

ANALYSIS

Mr. Bobo raises two issues on appeal. First, he contends that his silence, after he received warnings from Detective Richardson at 6:50 p.m. on April 4, was either an explicit or equivocal invocation of his Fifth Amendment right to remain silent. Subsequent interrogations, beginning with the one by Detective Sobczyk three hours later, failed to honor this assertion, and all statements that he made in them should have been suppressed. Second, Mr. Bobo asserts that Mr. Davison's conduct deprived him of the effective assistance of counsel, which should render inadmissible all statements that he made after Mr. Davison's visit. We shall deal with each of these issues in turn.

A. *The Right to Silence*

A suspect who is subject to custodial interrogation enjoys the right to terminate questioning at any time. *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694 (1966).

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his

privilege cannot be other than the product of compulsion, subtle or otherwise. *Id.* (footnote omitted). Once a suspect has exercised his right to silence, the police must abide by this decision and end interrogation. *See Michigan v. Mosley*, 423 U.S. 96, 103–04, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313 (1975). "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Id.* at 104, 96 S.Ct. at 326 (quoting *Miranda*, 384 U.S. at 474, 86 S.Ct. at 1628). A suspect "need not rely on talismanic phrases or 'any special combination of words' to invoke the right" to silence. *Bradley v. Meachum*, 918 F.2d 338, 342 (2d Cir.1990) (quoting *Quinn v. United States*, 349 U.S. 155, 162, 75 S.Ct. 668, 673, 99 L.Ed. 964 (1955)), *cert. denied*, ― U.S. ―, 111 S.Ct. 2835, 115 L.Ed.2d 1004 (1991)). When determining whether a suspect has invoked his right, "a court should examine 'the entire context in which the claimant spoke.'" *Id.* (quoting *United States v. Goodwin*, 470 F.2d 893, 902 (5th Cir.1972), *cert. denied*, 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973)). In certain circumstances, it may be unclear whether the suspect is actually exercising his right to silence and requesting that the police end questioning. However, "[e]ven an equivocal indication of the desire to remain silent can suffice to invoke *Miranda's* requirement that interrogation cease." *United States v. D'Antoni*, 856 F.2d 975, 980 (7th Cir.1988); *see also Jacobs v. Singletary*, 952 F.2d 1282, 1291–92 (11th Cir. 1992). In this situation, "[o]fficers may

ask questions intended to clarify whether the suspect was attempting to invoke his right to remain silent.... They must refrain, however, from any words or actions 'that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *D'Antoni*, 856 F.2d at 980–81 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980)); *see also Campaneria v. Reid*, 891 F.2d 1014, 1021 (2d Cir.1989), *cert. denied*, ― U.S. ―, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991); *Delap v. Dugger*, 890 F.2d 285, 290 (11th Cir.1989), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2628, 110 L.Ed.2d 648 (1990); *Lightbourne v. Dugger*, 829 F.2d 1012, 1018 (11th Cir.1987), *cert. denied*, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988). "Questions that burden the suspect in his attempt to assert his rights or attempt to wear down his resistance will not be considered permissible clarification." *D'Antoni*, 856 F.2d at 981.

 When reviewing a district court's decision to grant or deny a petition for writ of habeas corpus, we consider all questions of law de novo. *Matta–Ballesteros v. Henman*, 896 F.2d 255, 258 (7th Cir.), *cert. denied*, ― U.S. ―, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990). However, under the mandate of 28 U.S.C. § 2254(d), "state court factual findings that are reasonably based on the record are accorded a presumption of correctness." *Bryan v. Warden, Indiana State Reformatory*, 820 F.2d 217, 218–19 (7th Cir.), *cert. denied*, 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987). The state trial court found that Mr. Bobo was "mute"[3] after he was formally

---

3. The trial court found:

 After advising the defendant of his rights, Detective Richardson asked him if he understood his rights. He said yes, and then the detective asked him if he had any questions concerning his constitutional rights. The defendant said no, he understood them. Then when the defendant was asked whether he was willing to waive those rights and make any statements, the defendant remained mute. The defendant's demeanor was normal. The defendant was having no trouble comprehending or understanding the detective. The defendant made no requests at that time. The detective then terminated the interview and then took the defendant to be booked.

 ....

 The defendant's silence after being placed under arrest and being advised of his rights by Detective Richardson was not an invocation of his constitutional rights. The defendant answered the questions about understanding his rights and not having any questions. He did not request an attorney until 8:40 p.m. on April 5th, 1984, or request that he be asked no questions. He simply remained mute.

 *Bobo v. Kolb*, No. 88–C–394 (JPS), slip op. at Appendix 1, 3 (E.D.Wis. Nov. 15, 1990).

arrested and re-advised of his *Miranda* rights. This is a finding of fact adequately supported by the record to which we owe deference.[4] *See* 28 U.S.C. § 2254(d). In addition, the trial court held that Mr. Bobo's "silence after being placed under arrest and being advised of his rights by Detective Richardson was not an invocation of his constitutional rights." *Bobo v. Kolb*, No. 88–C–394 (JPS), slip op. at Appendix 3 (E.D.Wis. Nov. 15, 1990). Furthermore, on direct appellate review, the Wisconsin Court of Appeals also explicitly held that Mr. Bobo "did not invoke his right to remain silent." *State v. Bobo*, No. 86–0900–CR, slip op. at 9 (Wis.Ct.App. April 9, 1987) [139 Wis.2d 856, 407 N.W.2d 566 (table)]. Whether a suspect invoked his *Miranda* rights is a finding of fact to which we owe deference. *See Bryan*, 820 F.2d at 219; *Perri v. Director, Dept. of Corrections*, 817 F.2d 448, 451–52 (7th Cir.), *cert. denied*, 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987); *see also Lewis v. Huch*, 964 F.2d 670, 674–75 (7th Cir.1992); *Bae v. Peters*, 950 F.2d 469, 473–74 (7th Cir.1991); *Quadrini v. Clusen*, 864 F.2d 577, 582–83 (7th Cir.1989); *Smith v. Duckworth*, 856 F.2d 909, 912 (7th Cir.1988). We owe the same deference to a factual finding [5] of the state appellate court as we give to the factual findings of the state trial court. *See Sumner v. Mata*, 449 U.S. 539, 545–46, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722

(1981); *see also Marshall v. Lonberger*, 459 U.S. 422, 432–33, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983); *Burns v. Clusen*, 798 F.2d 931, 947 (7th Cir.1986) (Ripple, J., concurring). Our examination of the record convinces us that the state appellate court was on solid ground in making this finding. We note that, before Mr. Bobo became mute, he had freely answered questions throughout the afternoon of April 4. Indeed, he had continued to answer questions after he had received his first set of *Miranda* warnings. Also, the record suggests that the interval was brief between when Detective Richardson read the warnings, and when he took Mr. Bobo to be booked. As the district court noted, in this situation, his muteness cannot conclusively be viewed as an attempt to exercise his right to silence; it may "just as easily [have] been a pause while [Mr. Bobo] considered the advisability of answering further questions." *Bobo v. Kolb*, No. 88–C–394 (JPS), slip op. at 6. Consequently, the record adequately supports the determination of the Wisconsin Court of Appeals.

■ In the course of making the factual determination that Mr. Bobo never invoked his *Miranda* rights, the state appellate court noted that, when interrogating police officers are confronted with equivocal invocations of *Miranda* rights, they are permitted to address the suspect to clarify whether he desires to assert the right to

**4.** In his brief, Mr. Bobo contends that the state court's finding that he remained mute after being read his *Miranda* warnings is not supported by the record: "A *de novo* review of the testimony relating to Bobo's refusal to answer Richardson's questions is necessary since the state court's findings conclude that Bobo 'remained mute' without considering [D]etective Richardson's admission that Bobo's 'refus[al]' to make any statements' . . . made it clear that Bobo 'was not going to make a statement.'" Appellant's Br. at 15. After a review of the record, we agree with the district court that the conclusion that Mr. Bobo remained mute after Detective Richardson read his *Miranda* warnings is fairly supported by the record. The testimony of Detective Richardson was not free of ambiguity. However, when read as a totality, it is clear that there was an adequate basis for the state trial court's finding.

**5.** We note that, as a matter of its internal allocation of judicial responsibilities, Wisconsin has

apparently left the issue of whether there is a knowing, intelligent and voluntary waiver of *Miranda* rights to the appellate courts. *See State v. Bobo*, No. 86–0900–CR, slip op. at 4 (Wis.Ct.App. April 9, 1987) [139 Wis.2d 856, 407 N.W.2d 566 (table)]; *see also State v. Woods*, 117 Wis.2d 701, 345 N.W.2d 457, 465 (1984). This division of responsibility within the Wisconsin judicial structure is different from the prevailing view in the federal courts, *see Bryan*, 820 F.2d at 220, and, in any event, cannot control our determination of a federal court's responsibilities under 28 U.S.C. § 2254(d)(8). *See, e.g., Cuyler v. Sullivan*, 446 U.S. 335, 341 n. 5, 100 S.Ct. 1708, 1714 n. 5, 64 L.Ed.2d 333 (1980) (Supreme Court of the United States decides whether Pennsylvania Supreme Court's determination that attorney had not undertaken multiple representation is a question of fact). In any event, both the trial court and the appellate court found that he did not invoke his right to silence.

cut off all questioning. The Wisconsin appellate court articulated a correct understanding of the governing principles. *See D'Antoni*, 856 F.2d at 980. Moreover, assuming that Mr. Bobo's muteness after his formal arrest and re-advice of his *Miranda* rights can be characterized as equivocal, the record amply demonstrates that the police acted in conformity with the principles set forth in *D'Antoni*. After Mr. Bobo became mute, Detective Richardson asked no more questions. The police did not reinitiate contact until some three hours later when Detective Sobczyk read Mr. Bobo a fresh set of *Miranda* warnings and then explicitly asked him if he wished to answer questions.[6] Only after Mr. Bobo answered yes, and waived his right to silence, was he questioned about the murders. The record indicates that the police limited their questioning to whether he wished to remain silent. Likewise, there is no indication in the record that this limited questioning impermissibly badgered Mr. Bobo or otherwise discouraged him from exercising his right not to be interrogated. *See D'Antoni*, 856 F.2d at 980–81.[7]

## B. *The Effective Assistance of Counsel Issue*

Mr. Bobo also challenges the admissibility of his confessions based on Attorney Davison's dealings with the police while he was in custody. In particular, he alleges that Mr. Davison's relationship to the victims and their family created a conflict of interest which caused him to allow the police to interrogate Mr. Bobo and to counsel Mr. Bobo to confess to the murders. This conduct, according to Mr. Bobo, was constitutionally defective because he "was denied effective assistance of counsel during the interrogation process and any statements that he made after communicating with counsel should have been suppressed at trial." Appellant's Br. at 24–25.

We must first address a threshold question of whether this issue is properly before this court. As noted above, after his conviction, Mr. Bobo, through counsel,

---

**6.** In cases dealing with an equivocal invocation of the *Miranda* right to counsel, courts have held that the "mere rereading of the *Miranda* rights does not sufficiently clarify a suspect's equivocal request." *United States v. Fouche*, 833 F.2d 1284, 1288 (9th Cir.1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *United States v. Porter*, 764 F.2d 1, 7 (1st Cir.1985). However, in this case, the police did more than simply re-read Mr. Bobo his rights. Once Mr. Bobo fell mute, the police stopped questioning, and only resumed contact after some three hours had passed. *Cf. Towne v. Dugger*, 899 F.2d 1104, 1107, 1110 (11th Cir.) (after defendant equivocally invokes the right to counsel, police continue, without intermission, to interrogate and only read the *Miranda* warnings some time later), *cert. denied*, — U.S. —, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990). Then at the start of his interrogation of Mr. Bobo, Detective Sobczyk not only gave Mr. Bobo a fresh set of *Miranda* warnings, but also asked if he understood his rights, and if he wished to make a statement. Only when Mr. Bobo answered these questions affirmatively, and waived his rights, did interrogation begin. We believe that these facts indicate that the police fulfilled *Miranda*'s requirement of making sure that "the accused, knowing his rights, voluntarily relinquishes them." *Porter*, 764 F.2d at 7; *see Fouche*, 833 F.2d at 1288–89.

**7.** Our holding is not controlled by *Woods v. Clusen*, 605 F.Supp. 890, 897 (E.D.Wis.1985),

aff'd, 794 F.2d 293 (7th Cir.1986), on which Mr. Bobo principally relies. In *Woods*, the defendant, a minor, remained mute in the face of repeated police questioning. The district court granted a writ of habeas corpus, holding that the police had violated the defendant's *Miranda* rights by continuing to question him after he had fallen silent. This case antedated our holdings in *Perri* and *Bryan*. Moreover, Mr. Bobo's case is significantly distinguishable from *Woods*. First, unlike in *Woods*, the police interrogating Mr. Bobo did not "grill the silent suspect." *Woods*, 605 F.Supp. at 896. Consistent with *D'Antoni* and related cases, once Mr. Bobo fell mute, Detective Richardson ended interrogation. Further questions were not asked until a significant period of time had passed, it was ascertained that Mr. Bobo wished to talk, and he explicitly waived his right to silence. Second, the elements of police coercion and intimidation present in *Woods* are absent here. The *Woods* defendant, a minor, was taken barefoot to an interrogation room, shown graphic photos of a murder scene, and then questioned repeatedly about his role in the crime, despite the fact that he had remained silent. *Woods v. Clusen*, 794 F.2d 293, 295–96 (7th Cir.1986). Here, Mr. Bobo was an adult who had experience with the criminal justice system. In addition, there is no indication in the record, and it is not claimed, that the police coerced Mr. Bobo or overbore his will.

presented this claim to the Wisconsin trial court and court of appeals. The court of appeals refused to address this matter, however. It noted that, at his post-trial hearing, Mr. Bobo stated that Mr. Davison had not been his counsel, and that he had not wanted the claim to be brought. In the Wisconsin appellate court's view, this statement prevented Mr. Bobo from raising this issue on appeal.[8] In light of this conclusion, the state argues that Mr. Bobo has procedurally defaulted this effective assistance of counsel claim, precluding federal review. Mr. Bobo counters by arguing, albeit in conclusory fashion, that the rule applied by the court of appeals was not one "strictly or regularly followed" by the Wisconsin courts, and thus cannot serve as an adequate and independent state ground that would prevent habeas review.

"As a general rule, federal district courts may not reach the merits of a habeas petition challenging a state conviction if the 'state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds.'" *Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir. 1992) (quoting *Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991)). A federal court reviewing a habeas petition is required to respect a state court's finding, under state law, of waiver or procedural default. *Williams v. Lane*, 826 F.2d 654, 659 (7th Cir.1987). "'Federal courts do not sit to correct error made by state courts in the interpretation and application of state law.'" *Coleman v. O'Leary*, 845 F.2d 696, 700 (7th Cir.) (quoting *Williams*, 826 F.2d at 659), *cert. denied*, 488 U.S. 972, 109 S.Ct. 507, 102

L.Ed.2d 542 (1988). However, a defendant's failure to comply with a state procedural rule provides an adequate basis for barring habeas relief only if "the state court acts in a consistent and principled way. A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate, for the lack of notice and consistency may show that the state is discriminating against the federal rights asserted." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir.1990); *see also Dugger v. Adams*, 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989); *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988); *Barksdale*, 957 F.2d at 382; *Williams v. Lane*, 826 F.2d at 659.

*Ylst v. Nunnemaker*, —— U.S. ——, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991), teaches that, when determining whether a state's judgment rests on adequate and independent state grounds, we are to examine the "last reasoned opinion on the claim" issued by a state court. *See also Prihoda*, 910 F.2d at 1383. Because the Wisconsin Supreme Court summarily denied Mr. Bobo's petition for review, the "last reasoned opinion" on his ineffective assistance claim is that of the court of appeals. The text of that court's ruling follows:

During the hearing to consider postconviction relief, the issue of ineffective assistance of counsel was raised and argued based on the record of Davison's conduct when he visited Bobo in jail, which was made at the suppression hearing. At the end of the postconviction hearing, Bobo disavowed any responsibility for bringing a motion for ineffective assistance of counsel. In fact, he maintained that Davison was not his counsel, the trial court's findings notwithstand-

8. In its brief, the state argues that the Wisconsin Court of Appeals also denied Mr. Bobo's ineffective assistance of counsel claim because Mr. Bobo had "failed to follow the prescribed procedures for making an adequate record." Appellee's Br. at 13. According to the state, this failure would constitute a separate and independent state ground that would preclude habeas review. However, having reviewed the opinion of the court of appeals, we believe that that court based its decision not to consider Mr. Bobo's ineffective assistance claim solely on the ground that he personally disavowed it at the post-conviction relief hearing. Although the court of appeals mentions in its opinion the prescribed method to develop a record of counsel's effectiveness, *State v. Bobo*, No. 86–0900–CR, slip op. at 16 (Wis.Ct.App. April 9, 1987) [139 Wis.2d 856, 407 N.W.2d 566 (table) ] (quoting *State v. Burroughs*, 117 Wis.2d 293, 344 N.W.2d 149, 157 (1984)), it nowhere states that it was refusing to consider Mr. Bobo's claim because he may not have adhered to this method.

ing. It is inconsistent to raise the issue of ineffective assistance of counsel, when Bobo expressly did not wish to have the issue raised and he also stated that Davison was "not my counsel at that present time, and he was not representing me." We conclude that Bobo cannot now claim that he was denied the right to effective assistance of counsel.

*State v. Bobo,* No. 86–0900–CR, slip op. at 16–17 (Wis.Ct.App. April 9, 1987) [139 Wis.2d 856, 407 N.W.2d 566 (table)].

 In his reply brief, Mr. Bobo asserts, in conclusory fashion, that the rule that the Wisconsin Court of Appeals applied is inadequate, and therefore cannot bar habeas review, because it is not "strictly or regularly followed." Appellant's Reply Br. at 7–8. However, that is the extent of his claim. He cites no Wisconsin precedent dealing with the effect of inconsistency in litigation positions and otherwise offers no argument pointing out the inadequacy of the state rule. This treatment is inadequate to raise the issue. First of all, we note that, in conformity with Circuit Rule 28(f), "[a]ll arguments for reversal must appear in the opening brief so that the appellee may address them. We have consistently refused to consider arguments withheld until the reply brief." *Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir.1990) (collecting cases). The issue of procedural default was raised in the district court and, to the extent that it was a basis for decision in the district court,[9] the issue of uneven application of the state procedural rule was a ground for reversal and should have been argued in the opening brief. Even if we give Mr. Bobo the benefit of the doubt on this point, however, a far more significant deficiency in his presentation of the issue cannot be overlooked. Mr. Bobo's conclusory statement that the Wisconsin Court of Appeals applied a waiver

rule that was not strictly or regularly followed is inadequate compliance with Federal Rule of Appellate Procedure 28(a)(5). *See Beard v. Whitley County REMC,* 840 F.2d 405, 408 (7th Cir.1988). Mr. Bobo cites no case law to establish his allegation that the Wisconsin courts follow an irregular pattern in their application of this rule. In other habeas cases,[10] and, indeed, in direct criminal appeals,[11] we have required more. " 'It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.' " *Beard,* 840 F.2d at 408–09 (quoting *Sanchez v. Miller,* 792 F.2d 694, 703 (7th Cir.1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987)).

A procedural default that bars under state law consideration of the merits of a criminal defendant's challenge also bars consideration in habeas corpus unless the defendant can establish cause and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Freeman v. Lane,* 962 F.2d 1252, 1256–57 (7th Cir.1992); *United States ex rel. Tonaldi v. Elrod,* 782 F.2d 665, 668 (7th Cir.1986). In his brief, Mr. Bobo makes no attempt to establish cause and prejudice that would excuse his default. Therefore, we are prevented from reaching the merits of his claim that he was denied the effective assistance of counsel during his interrogation.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

A̲F̲F̲I̲R̲M̲E̲D̲.

---

9. The district court's opinion is somewhat ambiguous on this point. The district court wrote: "The state court of appeals concluded Bobo could not claim he was denied effective assistance of counsel because he expressly disavowed this issue at the post conviction hearing. This court is constrained to find that to the extent this issue is properly before the court, there is no authority for an ineffective assistance of counsel at interrogation claim much less sufficient factual predicate in the record to support

such a claim." *Bobo v. Kolb,* No. 88–C–394 (JPS), slip op. at 14 (E.D.Wis. Nov. 15, 1990).

10. *See, e.g., Morrison v. Duckworth,* 929 F.2d 1180, 1183 (7th Cir.1991); *White v. Finkbeiner,* 753 F.2d 540, 543 (7th Cir.1985).

11. *United States v. Fazio,* 914 F.2d 950, 959 (7th Cir.1990).