12 F.3d 1100
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Clarence B. JACKSON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 93-1174.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 16, 1993.*
Decided Nov. 17, 1993.
Rehearing Denied Dec. 29, 1993.
 
 Before COFFEY, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Clarence Jackson appeals the district court's judgment affirming the Secretary's denial of his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. 42 U.S.C. Sec. 1382, 1382c(a). Based on the magistrate judge's recommendation, the district court upheld the Secretary's decision, and granted summary judgment. We find that the Secretary properly considered the objective medical evidence, third-party observations and Jackson's subjective complaints of pain and that substantial evidence existed to support the denial of benefits.[1] Pope v. Shalala, 998 F.2d 473, 486 (7th Cir.1993); Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 538 (7th Cir.1992).
 
 
 2
 Jackson alleges also that the district court denied him due process when it failed to address his claim against the National Labor Relations Board (NLRB). Jackson filed an employment discrimination action in federal court that was dismissed with prejudice and affirmed on appeal. Jackson v. NLRB, No. 91-2052 (7th Cir. August 12, 1991). Because that claim was not before the district court, we dismiss that portion of the appeal. Williams v. Turner, No. 91-1283, slip op. at 4-5 (7th Cir. Sept. 28, 1993).
 
 
 3
 Although Jackson requests in his reply brief that sanctions be imposed upon the Secretary for failure to request an extension of time to file a brief under Circuit Rule 26, this is not an appropriate case for such action. Cf. United States v. Bush, 797 F.2d 536 (7th Cir.1986).
 
 
 4
 We AFFIRM for the reasons stated by the magistrate judge and the district court.
 
 ATTACHMENTS
 
 5
 UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF ILLINOIS AT DANVILLE
 
 
 6
 Oct. 1, 1992.
 
 
 7
 Case No. 91-2406.
 
 
 8
 Clarence B. JACKSON, Plaintiff,
 
 
 9
 v.
 
 
 10
 SECRETARY OF HHS, Defendant.
 
 RECOMMENDATION
 
 11
 This is an action filed pursuant 42 U.S.C. Sec. 405(g) seeking judicial review of the final decision of the Secretary of Health and Human Services denying the plaintiff's application for Supplemental Security Income (SSI).
 
 STATEMENT OF THE CASE AND PRIOR PROCEEDINGS
 
 12
 The plaintiff filed an application for SSI with the Social Security Administration (Agency) on December 22, 1989 claiming disability on account of low back pain, uncontrollable hypertension and emotional damage with an onset date of December 1, 1989. The application was denied initially and on reconsideration. The plaintiff then requested a hearing before an Administrative Law Judge (ALJ). The hearing before ALJ Edward M. Yampolsky was held September 13, 1990 at Springfield, Illinois. The plaintiff appeared pro se and testified. The Agency also called a vocational expert to testify at the hearing. The ALJ, considering the case de novo, found that the plaintiff was not under a disability and was not entitled to benefits (Tr. 20-26). The plaintiff appealed that decision to the Appeals Council which concluded there was no basis for granting the request for review. Therefore, the decision of the ALJ stands as the final decision of the Secretary. The plaintiff now seeks judicial review of that decision. The parties have filed Cross-Motions for Summary Judgment (# 8, Plaintiff & # 13, Defendant). In addition the plaintiff has filed a Motion for Default Judgment (# 15). That motion should be denied, as the defendant has fully complied with the orders of this court in respect to filing pleadings in this case. The summary judgment motions are fully briefed and are ripe for decision. Pursuant to 28 U.S.C. Sec. 636(b)(1)(B), I recommend that the motion of the plaintiff be denied, the motion of the defendant be allowed and the decision of the Secretary be affirmed.
 
 LAW AND STANDARD OF REVIEW
 
 13
 In order to be entitled to disability benefits under SSI, a plaintiff must show that his inability to work is medical in nature and that he is totally disabled. Disability benefits are meant only for "sick" persons and are not intended to be a surrogate unemployment insurance or welfare program. Thus, economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. See Sec. 416.966(c) (1992).
 
 
 14
 Establishment of disability under the Social Security Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which have lasted, or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. Sec. 423(a)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir.1980). That factual determination is made using a five-step test. See 20 C.F.R. Sec. 416.920. The steps are examined in order as follows:
 
 
 15
 1. Is the plaintiff presently unemployed?
 
 
 16
 2. Is the plaintiff's impairment "severe"? (20 C.F.R. Sec. 416.920.)
 
 
 17
 3. Does the impairment meet or exceed one of the list of specified impairments? (20 C.F.R. Part 404, Subpt.P.App. 1).
 
 
 18
 4. Is the plaintiff unable to perform his former occupation?
 
 
 19
 5. Is the plaintiff unable to perform any other work within the national economy?
 
 
 20
 An affirmative answer at any Step leads either to the next Step, or on Steps 3 and 5 to a finding that the plaintiff is disabled. A negative answer at any point, other than Step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir.1984). The plaintiff has the burden of production and persuasion on Steps 1-4. However, once the plaintiff shows inability to perform past work, the burden shifts to the Secretary to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir.1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir.1984).
 
 
 21
 The rules and the Grids set out in Appendix 2 of Subpart P of 20 C.F.R. Sec. 404 are considered in determining whether a plaintiff with exertional impairments is or is not disabled. The regulations also provide that if an individual suffers from a non-exertional impairment, as well as an exertional impairment, both are considered in determining residual functional capacity (20 C.F.R. Sec. 416.945). If a finding of disabled cannot be made based on exertional limitations alone, the Rules established in Appendix 2 are used as a framework in evaluating disability. In cases where the individual has solely a non-exertional impairment, such as pain or a mental impairment, a determination as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, giving consideration to the Rules for specific case situations in Appendix 2.
 
 
 22
 The Court's function on review is not to try the case de novo or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir.1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgato v. Bowen, 782 F.2d 79, 82 (7th Cir.1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous in light of the entire record, Imani v. Heckler, 797 F.2d 508 (7th Cir.) cert. denied, 479 U.S. 988 (1986).
 
 DISCUSSION AND ANALYSIS
 
 23
 In his findings, the ALJ stated that the plaintiff was eligible for consideration for SSI. He then examined the evidence in the sequential order as described above. He found at Step 1 that the plaintiff was not employed and had not engaged in substantial gainful activity since December 22, 1989. He found at Step 2 that the medical evidence established that the plaintiff suffers from spondylosis and arthritis of the knees, and that the impairments were "severe". He found at Step 3 that the plaintiff's impairments did not meet or exceed those listed specified impairments that would make the plaintiff presumptively disabled.
 
 
 24
 He found at Step 4 that the plaintiff was able to return to a prior occupation, that of a rehabilitation counselor. On that basis he concluded that the plaintiff was not disabled. Since his analysis ended at Step 4, he did not reach Step 5.
 
 
 25
 It is the ALJ's analysis and conclusions at Step 4 that the plaintiff ow challenges. As noted above, the plaintiff has the burden at Step 4 to prove by a preponderance of the evidence that he is unable to return to his prior work. The court's task on review is simply to determine whether the ALJ could reasonably find on the basis of the evidence contained in the record before him that the plaintiff could return to a prior occupation, Kapusta v. Sullivan, 900 F.2d 94 (7 Cir.1990).
 
 
 26
 The plaintiff appears in this court pro se, and did not request appointment of counsel. He argues that the ALJ failed to give proper consideration to the diagnoses of his treating physicians and that the ALJ failed to give the proper weight to his subjective complaints of pain. The Secretary has responded to these arguments and asserts that the ALJ's decision is supported by substantial evidence in all respects.
 
 
 27
 At the time of the hearing before the ALJ the plaintiff was 43 years old. He holds a BA in economics, an MA in labor and industrial relations and had finished course work for a law degree, but had not been awarded the degree. He was 6' 1" tall and weighed 235 pounds. He denied recent weight change. He lived alone in an upstairs apartment. He testified that he was able to drive a car, but didn't own one. (Tr. 40).
 
 
 28
 The plaintiff has worked as a rehabilitation counselor from 1972-1976; as an investigator for the NLRB from 1979-1980; and as a substitute teacher from 1981-1988. (Tr. 95; 46-52). He claims that he became disabled due to an auto accident in June 1988, when his knee hit the gearshift. He claims that he has experienced low back pain since then as well. The plaintiff claims that he went to a hospital after the accident, but stayed only 5 hours. There are no medical records in the file from 1988.
 
 
 29
 The first medical record is an incomplete report, presumably from Dr. Howard Finkel, an orthopedic surgeon of Houston, Texas, relating the plaintiff's injury. Dr. Finkel notes a history of hypertension, treated with medication. He found no signs of muscle atrophy or motor deficits in any of the extremities. Back flexion was within normal limits and straight leg raising was negative. Prior x-rays showed moderate advanced arthritis of the knee. (Tr. 112). On March 9, 1989, Dr. Finkel noted an MRI test, with results of slight bulging at the L5-S1 area, with no evidence of nerve root compression. Finkel advised conservative treatment. (Tr. 113). On March 2, 1989, Dr. Robert Galloway opined that the plaintiff had "disabling back pain" in the context of a workers' compensation case. (Tr. 114-115). A May 1989 report from a physical therapist notes some stiffness in the back, but essentially negative neurological tests. An impression of back strain was given, with conservative exercise therapy prescribed. (Tr. 116-117).
 
 
 30
 On February 8, 1990 the plaintiff was seen for a consultative exam by Dr. Richard Bilinsky, a physician selected by the Agency. Dr. Bilinsky conducted a full examination of the plaintiff. He noted that the plaintiff was not under a doctor's care at the time, took aspirin and Procardia (a calcium channel blocker usually prescribed for angina). He noted slight hypertension, with no evidence of retinopathy, cardiovascular disease or congestive heart failure. He noted a completely normal examination of the lower extremities and the spine, with normal range of motion and flexion. He noted no difficulty in performance in getting on and off the examining table, walking, walking on toes or heels, squatting and arising or hopping on one leg. He noted no muscle spasm or muscle atrophy. An x-ray report noted negative results except for slight old-appearing anterior wedging of the bodies of L1 and L2. The disc space was well maintained and S1 joints were normal. (Tr. 119-127).
 
 
 31
 In August 1990 the plaintiff consulted Drs. Galloway and Meyer. Dr. John Meyer, of Decatur, saw the plaintiff for the first time on August 10, 1990. He reports normal blood pressure, normal reflexes and normal straight leg raising. He prescribed Motrin for the plaintiff's complaints of pain. He referred the plaintiff for physical therapy, a course of treatment the plaintiff was unable to complete because of lack of funds. (Tr. 143-145).
 
 
 32
 On August 6 the plaintiff was in Houston, Texas to see Dr. Galloway, who had not seen the plaintiff since March of 1989. The exam noted a well developed muscular man who flexes, extends, and laterally bends fully but with some discomfort and pain. He noted straight leg raising produced pain at 60? on the right and 70? on the left. He found pain on palpation of the back at T12 to L2 or L3. The rest of the exam was normal. He referred the plaintiff to a physical therapist for conservative treatment, and prescribed Wygesic (a medication for mild to moderate pain) and Soma (a muscle relaxant). (Tr. 146-147). A brief note from Dr. Meyer dated August 22, 1990 states that the plaintiff is under treatment for back pain in order that he may return to work as soon as possible. (Tr. 148).
 
 
 33
 Finally, the plaintiff submitted a form from the Illinois Department of Revenue, Circuit Breaker Section, dated February, 1991 and signed by Dr. Meyer, stating that the plaintiff is disabled as of June 29, 1988. (Tr. 221).
 
 
 34
 At the hearing held September 13, 1990, the plaintiff testified that he was in constant pain, that he was preoccupied with the pain. He testified that he could not sleep at night, that he could sit only 20-30 minutes and could walk only a short distance. He also testified that he would not work at a minimum wage job, but wanted a job with salary and benefits equal to his education and background. (Tr. 56, 64).
 
 
 35
 At the hearing the ALJ took testimony from a vocational expert, Dr. James Lanier. Dr. Lanier had reviewed the plaintiff's background and had listened to the plaintiff's testimony. Dr. Lanier stated that the job of rehabilitation counselor was a sedentary job which required little or no lifting, and a sit/stand option. He stated that he believed without a shadow of a doubt that the plaintiff could return to his previous occupation as a vocational counselor. He also stated that he (Dr. Lanier) had similar back problems, requiring previous surgery and with constant pain, and he continued to work as a vocational counselor. Dr. Lanier also listed several other occupations in the national economy the plaintiff could perform. (Tr. 61-69).
 
 
 36
 The ALJ found that the plaintiff had severe back and knee impairments and had no mental impairments. He found that the plaintiff's complaints of pain were overstated. He found that the plaintiff retained the residual functional capacity to perform work-related activities at a sedentary level, and that the plaintiff's prior occupation as a vocational counselor fell within that level. He therefore concluded that the plaintiff was not disabled. The record amply supports that conclusion.
 
 
 37
 The plaintiff relies on conclusory statements made by Drs. Galloway, Finkel and Meyer. Dr. Finkel saw the plaintiff only for a short time in early 1989. Contrary to the plaintiff's assertions, Dr. Finkel's records do not state that the plaintiff is disabled. His objective findings show mild damage to the plaintiff's spine and knee, which seemed to be responding well to conservative physical therapy. He prescribed no medication and recommended no surgery. Dr. Finkel's objective findings support those of Dr. Bilinsky and the conclusion of the ALJ.
 
 
 38
 Dr. Galloway's findings do not support the plaintiff. Dr. Galloway's objective findings show a man with very slight limitations in flexation. Those findings support the conclusion of the ALJ.
 
 
 39
 Only Dr. Meyer opined that the plaintiff was disabled, and then in a very round-about way. Dr. Meyer has apparently seen the plaintiff only once or twice. His objective findings match those of Drs. Galloway, Finkel and Bilinsky. Dr. Meyer's signature on a Circuit Breaker form is not conclusive, or even persuasive evidence of the plaintiff's disability under the Act.
 
 
 40
 The ALJ found that the plaintiff's subjective complaints of pain were overstated. The plaintiff took no medication or over-the-counter medication for pain for over two years. He sought no medical attention for nearly a year. There is no evidence of weight loss, muscle atrophy or other clinical sign of constant chronic pain. Reports from the physical therapist suggest that the plaintiff's pain was relieved significantly with exercise or with simply moving around. There is little doubt that the plaintiff's condition will cause him some discomfort, but the finding of the ALJ that the pain does not further impair the plaintiff is supported by substantial evidence.
 
 
 41
 In conclusion, after a full review of the record, the decision of the ALJ and the arguments of the parties, I find that the record amply supports the conclusion that the plaintiff is not disabled. Accordingly, I recommend that the plaintiff's Motion for Summary Judgment (# 8) be DENIED; I further recommend that the defendant's Motion for Summary Judgment (# 13) be ALLOWED, and that the decision of the Secretary be AFFIRMED. I further recommend that the plaintiff's Motion for Default (# 15) be DENIED.
 
 
 42
 UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF ILLINOIS
 
 
 43
 CLARENCE B. JACKSON,
 
 
 44
 Plaintiff,
 
 
 45
 v.
 
 
 46
 SECRETARY OF HEALTH & HUMAN SERVICES, Defendant.
 
 
 47
 Dec. 22, 1992.
 
 
 48
 No. 91-2406.
 
 ORDER
 
 49
 HAROLD H. BAKER, District Judge.
 
 
 50
 This matter is before the court on the plaintiff's objection to the recommendation by Magistrate Judge Kauffman that the plaintiff's motions for summary judgment and default judgment be denied and that the Secretary's motion for summary judgment be allowed. The court has reviewed the administrative record, the briefs and cases cited by the parties, the objection and response and finds the plaintiff's position without merit. At this time, the court adopts the recommendation in its entirety.
 
 
 51
 The plaintiff claims first, that there is no evidence to support the Administrative Law Judge's (ALJ) finding that Jackson is able to perform his prior work as a vocational counselor and second, that the Magistrate did not apply the proper legal standard of review. To the extent that these claims were not presented to the Magistrate, the court will address each briefly.
 
 
 52
 Jackson has attached numerous documents to his objection, most of which have been submitted to and considered by the ALJ and the Magistrate. The remaining exhibits are not properly before the court. 42 U.S.C. Sec. 405(g). If Jackson wanted the records from Dr. Tran in the administrative record, he should have submitted them to the ALJ. At this stage, a court may remand a case to the Secretary for reconsideration only upon a showing the evidence is new and material, and that good cause existed for not having submitted it earlier. 42 U.S.C. Sec. 405(g); Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir.1989). The plaintiff has not satisfied this standard and the court will not remand the case to the ALJ. The court concurs with the Magistrate's conclusion that the findings of the ALJ are supported by substantial evidence in the record.
 
 
 53
 The plaintiff's proposition that the Magistrate applied the wrong legal standard of review is unsupported by authority and without merit. The standard of review explicated in the recommendation is correct and was properly applied to this case. Recommendation at 2-5.
 
 
 54
 For the foregoing reasons, the court overrules the plaintiff's objections to the recommendation.
 
 
 55
 IT IS THEREFORE ORDERED that the recommendation by the Magistrate (docket # 17) is ADOPTED; the defendant's motion for summary judgment (docket # 13) is GRANTED and the plaintiff's motions for summary judgment (docket # 8) and default judgment (docket # 15) are DENIED. The clerk is directed to enter judgment in favor of the defendant and against the plaintiff; each party shall bear its own costs.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Jackson's compliance with Fed.R.App.P. 28(a)(5) is dubious due to his incorporation of Appendix C into his argument section. It is not this court's duty to construct a party's arguments. See Bobo v. Kolb, 969 F.2d 391, 400 (7th Cir.1992). To ensure their consideration, legal arguments should be discussed in the brief's argument section